**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TOSADO, ET AL, <br><br> Plaintiffs, <br><br> v. <br><br> BOROUGH OF SPOTSWOOD, ET AL, <br><br> Defendants. | Civ. No. 05-5112 (DRD) <br><br> **O P I N I O N** |

*Appearances by:*

LAW OFFICE OF MARIA D. NOTO, P.C.
Maria Del Gaizo Noto
746 Highway 34, Suite B
Matawan, NJ 07747
(732) 441-9546

    *Attorney for Plaintiffs,*

DECKER & MAGAW, LLP
Thomas J. Decker
507 Westfield Avenue
Westfield, NJ 07090
(908) 301-9399

    *Attorney for Defendants.*

**DEBEVOISE, Senior District Judge**

    This action arises out of the arrest, incarceration, and suicide of Nestor Sean Tosado.  It

commenced on January 19, 2005, when Plaintiffs Catherine Tosado and Carmella Povlosky – Ms. Tosado as representative of the estate and heir at law of Nestor Sean Tosado and Ms. Povlosky in her own right – filed a complaint in the Superior Court of New Jersey alleging that the Borough of Spotswood and the Middlesex County Department of Corrections ("MCDC"), along with various Spotswood Police officers and MCDC personnel, violated the decedent's civil rights under 42 U.S.C. §§ 1983 and 1985 and committed various torts in connection with his arrest and incarceration. Based on the federal nature of Plaintiff's §§ 1983 and 1985 claims, the case was removed to this court on October 25, 2005.

The defendants named in the original complaint asserted cross-claims for indemnification against CFG Health Systems, LLC ("CFG"), which was added as a third-party defendant. Subsequently, Plaintiffs filed an amended complaint that added CFG as a direct defendant and alleged that the company caused the decedent's death by negligently failing to provide psychiatric and medical care during his incarceration.

In the current motion, CFG moves for summary judgment on those claims based on the argument that it is entitled to protection under the notice provision of the New Jersey Tort Claims Act, N.J.S.A § 59:8-8 ("NJTCA") and Plaintiffs failed to serve such notice. Plaintiffs concede that they did not serve notice, but argue that the NJTCA does not apply to CFG. For the reasons set forth below, the NJTCA does not require that CFG be served with notice of tort claims against it. Therefore, the motion for summary judgment is denied.

## I. BACKGROUND

CFG contracted with the MCDC, a New Jersey public entity, to provide medical and psychiatric care to inmates at the Middlesex County Adult Correctional Center ("MCACC") for a

period of three years starting in 2002.  The contract, which was executed on July 18th of that year, required CFG to comply with the "2002 Specifications for Medical Services Required by the Middlesex County Department of Adult Corrections and the Middlesex County Department of Youth Services."  Those specifications instructed CFG to "establish standards of care and thresholds of service consistent with all Federal, State, and Local statutes, regulations, court decisions and the applicable accreditation standards of the American Correction Association and the Manual of Standards for Health Service in Jails of the National Commission on Correctional Health Care," (Def.'s Br. Supp. Mot. Summ. J., Ex. B ¶ D16.0) but did not elaborate on how CFG should treat particular medical conditions or allocate staff within the MCACC's medical facilities.  Thus, CFG was responsible for providing medical and psychological care to inmates at the MCACC when the decedent was incarcerated in January 2003, and had discretion over decisions regarding when and how inmates were to receive medical treatment.

When he arrived at the MCACC at approximately 9:30 p.m. on January 20, 2003, the decedent underwent an intake examination.  CFG medical personnel noted that he had a history of depression and was in severe withdrawal from heroin and methadone.  (Def.'s Br. Supp. Mot. Summ. J. 13; Pl.'s Br. Supp. Mot. Opp'n Summ. J. 5, Ex. H 44:6-15.)  In spite of those facts, the decedent was not admitted to the prison's "special needs unit" – an area in which medical staff observed and monitored sick inmates.  Nor was he transferred to a hospital, even though the section of CFG's "Policy & Procedures Manual" addressing "Intoxication and Withdrawal" called for such measures in cases involving "[i]nmates experiencing severe, life-threatening intoxication or withdrawal." (Pl.'s Br. Supp. Mot. Opp'n Summ. J., Ex. E ¶ 1.)  Rather, it appears that he was placed in a standard cell and left to fend for himself until his next

examination at 6:25 the following morning.  (Def.'s Br. Supp. Mot. Summ. J. 13-14.)

When he was examined the morning of January 21, the decedent's condition had deteriorated.  His blood pressure had increased from 130 over 70 to 146 over 75, and he complained of nausea.  (Pl.'s Br. Supp. Mot. Opp'n Summ. J., Ex. F 44:20-45:5, Ex. H 59:18-60:2.)  At 10:30 that morning, prison staff contacted CFG personnel to report that the decedent was vomiting in his cell.  (Pl.'s Br. Supp. Mot. Opp'n Summ. J., Ex. H 60:17-22.)  Despite these developments, CFG nurses refused to examine him.  In fact, one CFG employee actually crossed the decedent's name off a list of inmates who were scheduled to receive psychiatric evaluations that day.  (Pl.'s Br. Supp. Mot. Opp'n Summ. J., Ex. H 39:3-19.)

Suffering from severe withdrawal and unable to get help, Mr. Tosado apparently decided to take his own life.  At 4:33 that afternoon, corrections officers found him hanging from a bed sheet in his cell.  He received no medical or psychological care between the examination at 6:25 a.m. that day and his death.  See (Def.'s Br. Supp. Mot. Summ. J. 14.)

## II. DISCUSSION

CFG does not dispute the fact that, other than the examinations at 9:30 p.m. on January 20 and 6:25 a.m. on January 21, it failed to provide the decedent with medical and psychological treatment.  Despite conflicting expert testimony on the question of whether the company's actions fell below the acceptable standard of care, CFG urges "that it is unnecessary for the court to address the factual question" of negligence.  (Def.'s Br. Supp. Mot. Summ. J. 13.)  Instead, CFG contends that it is entitled to summary judgment pursuant to Federal Rule of Civil Procedure 56(c) because Plaintiffs' suit is barred as a result of failure to serve proper notice under the NJTCA.  In order to decide that issue, it is necessary to examine the standard of review

governing summary judgment and the question of whether CFG is protected by the notice provision of the NJTCA.

**A. Standard of Review under Federal Rule of Civil Procedure 56(c)**

Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

On a motion for summary judgment, the moving party has the burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine issue exists and a trial is necessary. Id. at 324. In meeting its burden, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just simply create "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The non-moving party, however, cannot create a genuine issue of material fact by simply replacing the conclusory allegations of the complaint with conclusory allegations in an affidavit. Rather, the non-moving party must set forth specific facts showing that there is a genuine issue

for trial.

In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The Court's function, however, is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. If there are no issues that require a trial, then judgment as a matter of law is appropriate.

**B. The New Jersey Tort Claims Act Notice Requirement**

CFG argues that it is entitled to summary judgment because it is protected under the notice provision of the NJTCA and Plaintiffs failed to serve timely notice of their suit. (Def.'s Br. Supp. Mot. Summ. J. 15.) In essence, CFG contends that the circumstances surrounding the decedent's suicide cannot "affect the outcome of the suit under governing law," see Kaucher, 455 F.3d at 423, because the state tort claims asserted against it are statutorily barred. That argument is contradicted by both the statute and the case law construing it.

It is clear on the face of the statute that CFG is not entitled to protection under the NJTCA's notice provision. The statute bars recovery "against a public entity or public employee" if the claimant "failed to failed to file his claim with the public entity within 90 days of accrual." N.J.S.A. § 59:8-8(a). A "public entity" is defined as "the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State," while a "public employee" is any "employee of a public entity." Id. The statute's definition of "employee" explicitly states that the term "does not include an independent contractor." Id. Therefore, CFG's status as an independent contractor places it

outside the protection of the notice provision of NJTCA and compels the conclusion that Plaintiffs' suit is not barred for failure to serve notice.

That conclusion is supported by New Jersey case law construing the NJTCA. CFG cites <u>Vanchieri v. New Jersey Sports Authority</u>, 514 A.2d 1323 (N.J. 1986), in support of the proposition that the immunity granted to public entities and employees under the NJTCA extends to independent contractors working on behalf of a public entity. (Def.'s Br. Supp. Mot. Summ. J. 16.) That argument misconstrue's <u>Vanchieri</u>'s holding. In that case, the Supreme Court of New Jersey ruled that an independent contractor hired by a state agency to provide security at sporting events was not protected by the NJTCA. In doing so, the Court noted that the definition of "employee" under the statute specifically excludes independent contractors, thereby assuring that they are not immune. <u>Id.</u> at 1326. The Court did state that independent contractors "will not be held liable for work performed in accordance" with specifications provided by a public entity, but held that the contractor in that case was not immune because the state agency did not dictate how security personnel should be deployed or how they should carry out their duties. <u>Id.</u> at 1326-27. Rather, the contractor was left with discretion over those decisions. <u>Id.</u>

Similarly, CFG had discretion over decisions as to how it should treat particular medical conditions and allocate staff within the MCACC's medical facilities. While CFG argued in its brief that it was "strictly controlled" while performing its duties under the contract, none of the bid specifications cited as evidence of that claim give Middlesex County or any other public entity the power to dictate how particular medical conditions should be treated or determine the allocation of CFG medical personnel within the MCACC. <u>See</u> (Def.'s Br. Supp. Mot. Summ. J. 18-21.) In fact, CFG conceded in its reply brief that "[a]s a medical provider CFG's employees

7

were required to exercise their judgment in treating and responding to Mr. Tosado's medical needs." (Def.'s Reply Br. Supp. Mot. Summ. J. 4.)  Compare Rodriguez v. N.J. Sports & Exposition Auth., 472 A.2d 146, 149-50 (N.J. Super. 1983) (holding that independent contractor who provided security at racetrack was immune because the "work was performed under the guidance and supervision of representatives of the public entity."); Cobb v. Waddington, 380 A.2d 1145, 1149 (N.J. Super. 1977) (holding that independent contractor who selected and placed traffic barricades in accordance with specifications of public entity was immune from suit based on error in those specifications).  Since the allegedly negligent behavior by CFG was the result of discretionary decisions of its own personnel and not the specifications of a public entity or employee, CFG cannot claim immunity under the NJTCA for suits arising from those acts.

  In its reply brief, CFG argues that even if it is not entitled to immunity under the NJTCA, it is still protected by the notice provision of that statute.  See (Def.'s Reply Br. Supp. Mot. Summ. J. 2.)  That argument is directly at odds with the plain language of the NJTCA.  The notice provision of that statute applies only to public entities and employees.  See N.J.S.A. § 59:8-8(a).  CFG is neither.  N.J.S.A. § 59:1-3.  Therefore, it was not entitled to notice of Plaintiffs' claim, and cannot argue that the suit is barred for failure to provide such notice.

## III.  CONCLUSION

Having rejected CFG's argument that it was entitled to immunity and notice of Plaintiffs claims pursuant to the NJTCA, this court finds that there is a material dispute as to whether CFG was negligent in not providing medical treatment to the decedent while he was in withdrawal. Therefore, CFG's Motion for Summary Judgment is denied.

The court will enter an order implementing this opinion.


*s/ Dickinson R. Debevoise*
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: September 15, 2008