**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CATHERINE TOSADO, ET AL, | |
| Plaintiffs, | Civ. No. 05-5112 (DRD) |
| v. | **O P I N I O N** |
| MIDDLESEX COUNTY DEPARTMENT OF CORRECTIONS, ET AL, | |
| Defendants. | |

*Appearances by:*

LAW OFFICE OF MARIA D. NOTO, P.C.
Maria Del Gaizo Noto
746 Highway 34, Suite B
Matawan, NJ 07747
(732) 441-9546

   *Attorney for Plaintiffs,*

DECKER & MAGAW, LLP
Thomas J. Decker
507 Westfield Avenue
Westfield, NJ 07090
(908) 301-9399

   *Attorney for Defendants.*

**DEBEVOISE, Senior District Judge**

   This action arises out of the arrest, incarceration, and suicide of Nestor Sean Tosado.  It

commenced on January 19, 2005, when Plaintiffs Catherine Tosado and Carmella Povlosky –

Ms. Tosado as representative of the decedent's estate and Ms. Povlosky in her own right – filed a Complaint in the Superior Court of New Jersey asserting claims under 42 U.S.C. §§ 1983 and 1985 against the Borough of Spotswood, various Spotswood Police officers, the Middlesex County Department of Corrections ("MCDC"), and MCDC Warden Abode for alleged violations of the decedent's civil rights and various torts committed in connection with his arrest and incarceration.  Based on the federal nature of Plaintiff's claims, the case was removed to this Court on October 25, 2005.

The Defendants named in the original Complaint asserted claims for indemnification against CFG Health Systems, LLC ("CFG"), which was added as a third-party defendant.  CFG, in turn, asserted a cross-claim for indemnification against the MCDC and Warden Abode ("Middlesex Defendants").  Subsequently, Plaintiffs filed an Amended Complaint that added CFG as a direct defendant and alleged that the company caused the decedent's suicide by negligently failing to provide psychiatric and medical care during his incarceration.

Plaintiffs voluntarily dismissed their claims against the Borough of Spotswood and all individual police officers on March 19, 2009.  That same day, the MCDC and Warden Abode voluntarily dismissed their claims for indemnification against CFG, and CFG voluntarily dismissed all of its cross claims.  Thus, the only remaining Defendants are the MCDC, Warden Abode, and CFG, each of whom is sued directly by the Plaintiffs.  With respect to the Middlesex Defendants, Plaintiffs contend that (1) the MCDC and Warden Abode, in his official capacity, violated the decedent's 14th Amendment right to medical care while incarcerated and awaiting trial, and (2) that Warden Abode, in his personal capacity, failed to properly train and supervise MCDC medical personnel.  Plaintiffs' claims against CFG allege medical malpractice and request damages under (1) the New Jersey Wrongful Death Statute, N.J. Stat. Ann. § 2A:31-1, <u>et.</u>

seq., (2) the New Jersey Survivor Statute, N.J. Stat. Ann. § 2A:15-3, and (3) the common law doctrine of negligent infliction of emotional distress.

Currently before the court are two Motions for Summary Judgment, one submitted by the Middlesex Defendants and the other by CFG. The Middlesex Defendants contend that Plaintiffs' claims against them must be dismissed because (1) there is no evidence that the decedent's suicide was caused by any policy, practice, or custom endorsed or adopted by the prison, and (2) to the extent that Warden Abode is sued in his personal capacity, he is entitled to qualified immunity. In support of its motion, CFG argues that (1) all wrongful death claims based on losses by Plaintiffs Catherine Tosado and Carmella Povlosky must be dismissed because only the decedent's heirs through intestate succession – in this case his son, Kyle Tosado – may recover pursuant to the New Jersey Wrongful Death Statute; (2) Kyle Tosado has suffered no ascertainable loss and therefore may not assert a wrongful death claim; (3) all claims under the New Jersey Survivor Statute must be dismissed because only the general administrator of a decedent's estate may bring such claims and no general administrator has been appointed; (4) Plaintiffs' claims for punitive damages must be dismissed because such damages are not allowed under the New Jersey Wrongful Death Statute, the conduct of CFG employees was not reckless or malicious, and CFG may not be held vicariously liable for such damages; and (5) all claims for negligent infliction of emotional distress must be dismissed because Plaintiffs were not present at the time the decedent committed suicide and therefore suffered no immediate shock. For the reasons set forth below, the Middlesex Defendants' Motion for Summary Judgment will be granted. CFG's Motion for Summary Judgment will be granted in part and denied in part.

## I. BACKGROUND

On January 20, 2003, the decedent was stopped by Spotswood police officers while driving an automobile.  After being informed by a radio dispatcher that the decedent was the subject of two active arrest warrants, the officers searched his person and vehicle.  On doing so, they discovered that he was in possession of illegal drug paraphernalia.  The officers attempted to arrest the decedent, but he broke free of their custody and fled on foot.  He was later found at the home of Plaintiff Carmella Povlosky, his aunt, at which time he was arrested by Spotswood police, fingerprinted and processed, and transported to the Middlesex County Adult Correctional Facility ("MCACC"), a facility operated by the MCDC, for pretrial detention.[1]

CFG contracted with the MCDC to provide medical and psychiatric care to inmates at the MCACC for a period of three years starting in 2002.  The contract, which was executed on July 18th of that year, required CFG to comply with the "2002 Specifications for Medical Services Required by the Middlesex County Department of Adult Corrections and the Middlesex County Department of Youth Services."  Those specifications instructed CFG to "establish standards of care and thresholds of service consistent with all Federal, State, and Local statutes, regulations, court decisions and the applicable accreditation standards of the American Correction Association and the Manual of Standards for Health Service in Jails of the National Commission on Correctional Health Care," but did not elaborate on how CFG should treat particular medical conditions or allocate staff within the MCACC's medical facilities.  Thus, CFG was responsible

---

[1] In their Complaint, Plaintiffs contended that Spotswood police officers committed Fourth Amendment violations by unlawfully searching the decedent's person and vehicle, and by entering Ms. Povlosky's home to effect the decedent's arrest without first obtaining a warrant or consent.  Because Plaintiffs voluntarily dismissed their claims against the Spotswood Police Department and all individual Spotswood police officers on March 19, 2009, the legality of those actions is no longer at issue.  Since the claims asserted by Plaintiff Carmella Povlosky in her own right were premised on the alleged illegality of the search of her house by Spotswood Police officers and all such claims have been voluntarily dismissed, Ms. Povlosky will be terminated as a party to the action.

for providing medical and psychological care to inmates at the MCACC when the decedent was incarcerated in January 2003, and had discretion over decisions regarding when and how inmates were to receive medical treatment.

When he arrived at the MCACC at approximately 9:30 p.m. the night of his arrest, the decedent underwent an intake examination. CFG medical personnel noted that he had a history of depression and was in severe withdrawal from heroin and methadone. In spite of those facts, the decedent was not admitted to the prison's "special needs unit" – an area in which medical staff observed and monitored sick inmates. Nor was he transferred to a hospital, even though the section of CFG's "Policy & Procedures Manual" addressing "Intoxication and Withdrawal" called for such measures in cases involving "[i]nmates experiencing severe, life-threatening intoxication or withdrawal." Rather, it appears that he was placed in a standard cell and left to fend for himself until his next examination at 6:25 the following morning.

When he was examined the morning of January 21, the decedent's condition had deteriorated. His blood pressure had increased from 130 over 70 to 146 over 75, and he complained of nausea. At 10:30 that morning, prison staff contacted CFG personnel to report that the decedent was vomiting in his cell. Despite these developments, CFG nurses refused to examine him. In fact, one CFG employee actually crossed the decedent's name off a list of inmates who were scheduled to receive psychiatric evaluations that day.

Suffering from severe withdrawal and unable to get help, the decedent apparently decided to take his own life. At 4:33 that afternoon, corrections officers found him hanging from a bed sheet in his cell. He received no medical or psychological care between the examination at 6:25 a.m. that day and his death.

## II. DISCUSSION

Neither the Middlesex Defendants nor CFG disputes the fact that, other than the examinations at 9:30 p.m. on January 20 and 6:25 a.m. on January 21, the decedent did not receive medical care to address his withdrawal between the time he was admitted to the MCACC and his suicide.  The Middlesex Defendants argue, however, that Plaintiffs have produced no evidence relating to the treatment of any other inmate, and have therefore failed to establish a necessary element of their 14th Amendment claim: that the failure on the part of MCACC medical personnel to treat the decedent was the result of a policy, practice, or custom adopted or endorsed by prison authorities.  In support of that argument, the Middlesex Defendants point out that Plaintiffs' expert, Mr. Thomas Rosazza – who testified that the decedent's withdrawal symptoms likely contributed to his decision to commit suicide – based his opinion on reports that related only to the decedent, and performed no investigation as to the prevalence of similar incidents in the MCACC population as a whole.  Plaintiffs' effectively concede that fact, stating in their brief that "Thomas Rosazza based his opinion on all of the documents provided in discovery in <u>this case</u>."  (Pls.' Br. Opp'n Middlesex Mot. Summ. J. 17) (emphasis added). Plaintiffs contend, however, that the decedent's suicide is indicative of a broader practice of ignoring withdrawing inmates that was allegedly followed by MCACC personnel.

Plaintiffs' claims against Warden Abode in his personal capacity are premised on the contention that he failed to properly train and supervise the medical personnel working at the MCACC.  <u>See</u> (Pls.' Br. Opp'n Middlesex Mot. Summ. J. 23-24.)  The Middlesex Defendants argue that Warden Abode is entitled to qualified immunity because Plaintiffs have not submitted evidence of the three elements necessary to prevail on such claims: (1) that Warden Abode was aware of unconstitutional conduct on the part of MCACC personnel, (2) was deliberately

indifferent to such violations, and (3) that indifference caused the decedent's suicide.  Plaintiffs agree that they must demonstrate the three aforementioned elements, but argue that Warden Abode's deposition testimony shows that he "allowed an encouraged a policy of indifference to the medical needs of inmates."  (Id. at 24.)

CFG argues that summary judgment is appropriate on the three claims asserted against it: (1) wrongful death pursuant to N.J. Stat. Ann. § 2A:31-1, et. seq., (2) a survivor action pursuant to N.J. Stat. Ann. § 2A:15-3, and (3) common law negligent infliction of emotional distress. With respect to Plaintiffs' wrongful death claim, the company contends that "under the wrongful death statute [N.J. Stat. Ann. §] 2A:31-1, et. seq., neither Catherine Tosado nor Lisa [Povlosky] qualify as beneficiaries who would be entitled to recover."  (CFG Br. Supp. Mot. Summ. J. 11.) Rather, any recovery pursuant to the present wrongful death action would be for the "exclusive benefit of the persons entitled to take any intestate personal property of the decedent."  N.J. Stat. Ann. § 2A:31-4.  Thus, the only individual entitled to recover in this case is the decedent's son, Kyle Tosado.  CFG argues, however, that the decedent did not financially support his son or render any advice, guidance, or counsel of economic value, and Kyle Tosado therefore suffered no ascertainable pecuniary loss compensable by a wrongful death action.  (CFG Br. Supp. Mot. Summ. J. 15-18.)

Turning to Plaintiffs' survivor action under N.J. Stat. Ann. § 2A:15-3, CFG argues that summary judgment is required because such actions can only be brought by the general administrator of an estate.  (Id. at 19.)  Plaintiff Catherine Tosado has been named administrator ad prosequendum of the decedent's estate, but no general administrator was ever named. Therefore, CFG contends that "there is no person qualified to prosecute [the survivor] action at trial."  (Id. at 21.)

CFG contends that the Court should also grant summary judgment on Plaintiffs' third claim against the company, common law negligent infliction of emotional distress.  Under New Jersey law, litigants seeking to recover on such claims are required to prove "(1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate, familial relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional distress."  Portee v. Jaffee, 417 A.2d 521, 528 (N.J. 1980).  It is undisputed that Plaintiffs were not present at the time of the decedent's suicide.  Therefore, CFG contends that Plaintiffs have failed to demonstrate a necessary element of their claim.

Even if the Court refuses to grant summary judgment, CFG argues that Plaintiffs are not entitled to punitive damages.  The company advances three bases for that contention: (1) pursuant to N.J. Stat. Ann. § 2A:31-5, such damages are not permitted in wrongful death actions, (2) under New Jersey law, punitive damages cannot be assessed against an employer based on the acts of its employees unless those acts were authorized, participated in, or ratified by the employer, and (3) as a factual matter, the failure of CFG personnel to treat the decedent prior to his suicide was not motivated by malice or a willful disregard for his safety.

## A.  Standard of Review

Summary judgment is proper where "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party."  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  For a fact to be material, it must have the ability to "affect the outcome of the suit under

governing law." Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325.  If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine fact issue exists and a trial is necessary.  Id. at 324.  In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party.  See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  If there are no issues that require a trial, then judgment as a matter of law is appropriate.  Id. at 251-52.

## B.  The Middlesex Defendants

As discussed above, Plaintiffs argue that, in failing to treat the decedent prior to his suicide, the Middlesex Defendants deprived him of his 14th Amendment right to medical care while incarcerated and awaiting trial.  On that basis, Plaintiffs' assert claims against the Middlesex Defendants under 42 U.S.C. §§ 1983 and 1985.  The former section allows a plaintiff to bring a civil suit against any person or municipal entity who infringes on his or her "rights,

privileges, or immunities secured by the Constitution or laws of the United States" while "acting under color of state law." Parratt v. Taylor, 451 U.S. 527, 535 (1981) overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327, (1986). The latter allows a plaintiff to recover against any individual who engages in a conspiracy to so infringe. 42 U.S.C. § 1985.

When a plaintiff brings suit pursuant to § 1983 against a municipal body instead of the individuals who committed the alleged violation, he or she must demonstrate that the violations on which the suit is premised resulted from a policy, practice, or custom either officially promulgated or unofficially encouraged by the body's officers. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978). "[A] municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. at 691 (emphasis in original). Thus, a plaintiff seeking to hold a municipality liable for the actions of its employees must demonstrate either (1) that those actions were committed pursuant to a policy endorsed by the municipality or (2) were part of a customary practice as evidenced by a pattern of similar violations. See Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001) (affirming trial court's grant of summary judgment due to plaintiffs' failure to demonstrate a "pattern" of abuse).

Plaintiffs do not argue that the alleged violation in this case – the failure of MCACC personnel to provide the decedent with medical treatment prior to his suicide – was the result of any official policy adopted by the municipality. Rather, they contend that "it was the MCAC[C]'s 'actual' policy of treating withdrawing inmates as opposed to its written policy that caused the pain, suffering and ultimate suicide of" the decedent. (Pls.' Br. Opp'n Middlesex Mot. Summ. J. 19.) Despite that assertion, however, Plaintiffs have submitted no evidence regarding the treatment of other prisoners at the MCACC that would lead to the conclusion that it

was customary for personnel at that facility to refuse to treat inmates in need of medical attention.  In the absence of such evidence, the record cannot support an inference that the alleged violations of the decedent's 14th Amendment right to medical care were part of a custom encouraged by the MCDC or Warden Abode.  See Brown, 269 F.3d at 216.  Nor have Plaintiffs presented any evidence of a conspiracy to commit such violations.  Therefore, the Court will grant summary judgment on Plaintiffs' § 1985 cause of action and the portion of the § 1983 claims asserted against the MCDC and Warden Abode in his official capacity.

The § 1983 claims asserted against Warden Abode in his personal capacity are similarly meritless.  In order to prevail on their claim that Warden Abode failed to properly train and supervise the medical personnel at the MCACC, Plaintiffs "must (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk, and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure."  Brown, 269 F.3d at 216.  A supervisor may not be held liable pursuant to § 1983 for the actions of his or her employee unless "the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate."  Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998).

The claims asserted against Warden Abode in his personal capacity fail two elements of the aforementioned standard.  First, Plaintiffs have not identified any specific supervisory practice that would have prevented the decedent's suicide.  Rather than identifying with

particularity the omissions or oversights on the part of Warden Abode that allegedly caused the decedent's suicide, the Complaint states in a conclusory manner that all Defendants "failed to instruct … on a continuing basis the officers under their control to refrain from … violat[ing] the rights, privileges, and immunities guaranteed to a citizen by the laws and Constitution of the United States."  (Compl. at 20, ¶ 3.)  In their brief regarding the current motions, Plaintiffs cited various statements by Warden Abode that he was the "ultimate supervisor" at the MCACC and was responsible for training its medical personnel, but pointed to no specific deficiency in the instruction of those employees that might have caused the decedent's suicide.  (Pls.' Br. Opp'n Middlesex Mot. Summ. J. 23-24.)  Therefore, the Court finds that Plaintiffs have not sufficiently proven the first element of their failure to train or supervise claim by identifying a specific supervisory practice or procedure that Warden Abode failed to employ.  See Brown, 269 F.3d at 216.

Additionally, there is no evidence that Warden Abode had personal knowledge of either the failure on the part of MCACC medical personnel to treat the decedent prior to his suicide or a pattern of similar violations.  Plaintiffs cite various statements by Warden Abode that he was responsible for overseeing all prison personnel.  See (Pls.' Br. Opp'n Middlesex Mot. Summ. J. 23.)  Those statements cannot, however, form the basis for a failure to train/supervise claim, as it is well-established that such liability "cannot be predicated solely on the operation of respondeat superior."  Rode v. Dellarciprete, 845 F.2d 1145, 1207 (3d Cir. 1988).  Therefore, the Court will grant summary judgment on the claims asserted against Warden Abode in his personal capacity and dismiss all claims against the Middlesex Defendants.

**C. CFG**

CFG argues that summary judgment is appropriate on Plaintiffs' wrongful death claim because, under the New Jersey law, the allowable recovery on such claims is limited to pecuniary harm suffered by the decedent's son, Kyle Tosado, and Plaintiffs have not demonstrated that such damages exist.  CFG is correct in its characterization of the law; any recovery pursuant to the New Jersey Wrongful Death Statute is for the "exclusive benefit of the persons entitled to take any intestate personal property of the decedent."  N.J. Stat. Ann. § 2A:31-4.  Thus, only the decedent's son is entitled to recover in a wrongful death action, N.J. Stat. Ann. § 3B:5-4, and that recovery "is limited to loss of future financial contributions and loss of companionship and care."  N.J. Div. of Youth & Family Servs. v. M.W., 942 A.2d 1, 14 (N.J. Super. Ct. App. Div. 2007).

The company is wrong, however, in arguing that summary judgment is appropriate because "there is no proof that the decedent was providing these benefits to his son."  (CFG Br. Supp. Mot. Summ. J. 17.)  Kyle Tosado was five years old and residing with his mother in Florida at the time of decedent's suicide.  Yet despite his tender age, it appears from the record that he visited the decedent in New Jersey prior to his death, and often spoke to his father on the phone.  (Pls.' Br. Opp'n CFG Mot. Summ. J., Ex. KK.)  Moreover, the decedent was subject to a New York court order mandating that he pay $124.00 per week in child support.  (Id.)  In light of that evidence, a material question of fact exists regarding whether Kyle Tosado suffered a pecuniary loss of future financial contributions, companionship, and care as the result of his father's suicide.  Therefore, the Court will deny CFG's request for summary judgment on Plaintiffs' wrongful death claim.

CFG contends that the Court should grant summary judgment on the survivor action brought by Plaintiffs pursuant to N.J. Stat. Ann. § 2A:15-3 because such claims must be pursued by the general administrator of a decedent's estate, and although Catherine Tosado had been named administrator ad prosequendum, no general administrator existed at the time the pending motion was filed.  (CFG's Br. Supp. Mot. Summ. J. 19); Kern v. Cogan, 226 A.2d 186, 193 (N.J. Super. Ct. Law Div. 1967) ("[T]he administrator ad prosequendum is the proper party to bring a wrongful death action and the general administrator is the proper party to institute a survival action.").  That argument depends on a technical distinction between the two types of administrator that, if credited, would result in a miscarriage of justice by barring the decedent's estate from litigating a claim it could have otherwise pursued based on the fact that Catherine Tosado mistakenly believed that such a claim could be brought by an administrator ad prosequendum.  See (Compl. ¶ 5) (mistakenly stating that Catherine Tosado, as administrator ad prosequendum, "is empowered and authorized to bring a survival actions.").  Furthermore, CFG's argument has been rendered moot by the fact that Catherine Tosado was named general administrator of the decedent's estate after the Motion for Summary Judgment was filed. Therefore, the Court will deny CFG's request for summary judgment on Plaintiffs' survivor action.  CFG will not be prejudiced by today's ruling, as it has been aware that Plaintiffs were pursuing a survivor action throughout the course of this litigation, and has been given ample opportunity to prepare the necessary arguments to proceed to trial on that aspect of the case.

In contrast, summary judgment is appropriate on Plaintiffs' third cause of action, common law negligent infliction of emotional distress.  As discussed above, such claims require a litigant to prove that he or she observed the death or injury of a loved one at the scene of the accident allegedly caused by the defendant's negligence.  Portee, 417 A.2d at 528.  Therefore,

since it is undisputed that neither of the Plaintiffs was present at the MCACC when the decedent committed suicide, their negligent infliction of emotional distress claim is insufficient as a matter of law, and the Court will grant summary judgment in favor of CFG.

As a final matter, CFG contends that Plaintiffs are not entitled to punitive damages on either of their remaining claims – a wrongful death suit under N.J. Stat. Ann. § 2A:31-1 and a survivor action pursuant to N.J. Stat. Ann. § 2A:15-3.  The Court agrees.  New Jersey law explicitly prohibits such awards in wrongful death actions.  N.J. Stat. Ann. § 2A:31-5. Moreover, it is well-established that an "employer should be liable for punitive damages only in the event of actual participation by upper management or willful indifference" on the part of management to violations carried out by employees.  Lehman v. Toys R Us, Inc., 626 A.2d 445, 464 (N.J. 1993); see also Winkler v. Hartford Accident & Indem. Co., 168 A.2d 418, 422 (N.J. Super. Ct. App. Div. 1961) ("Exemplary damages may not be recovered against an employer for the wrongful act of an employee, unless the act was specifically authorized, participated in, or ratified by the master.").

Plaintiffs have submitted no evidence that the failure on the part of CFG personnel to treat the decedent was ratified or participated in by the company's management.  As discussed above, CFG's official policy when dealing with inmates in "severe withdrawal" called for transferring such individuals to a hospital or prison medical facility for monitoring and treatment. While it appears that the CFG nurses who examined the decedent in this case disobeyed that policy, there is no evidence that they were instructed to do so by company supervisors or upper management.  Thus, punitive damages may not be awarded against CFG on either of Plaintiffs' remaining claims.

### III.  CONCLUSION

For the foregoing reasons, the Middlesex Defendants' Motion for Summary Judgment is granted, and all claims against the Middlesex Defendants are dismissed.  Summary judgment is also granted on Plaintiffs' negligent infliction of emotional distress claim against CFG. Summary judgment is denied on Plaintiffs' wrongful death suit and a survivor action against CFG, but punitive damages may not be awarded in the event that Plaintiffs prevail on those claims at trial.  Plaintiff Carmella Povlosky is terminated as a party to the action.

The Court will enter an order implementing this opinion.

  __s/ Dickinson R. Debevoise_____
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: May 28, 2009